Public Risk Innovation Solutions v. AmTrust Financial Services, Case No. 21-16315. And we'll first hear from Mr. Keeley. Thank you, Your Honor. May it please the Court, Sean Keeley for the appellant to AmTrust. If I may, I'd like to reserve three minutes for rebuttal. This case presents straightforward questions of contract interpretation in the context of arbitration agreements. And it's particularly important to the insurance and reinsurance industry because of the prevalence of arbitration clauses in insurance and reinsurance agreements. And the principles for deciding the questions presented in this case were clear. Under California law, statutes and canons of construction, the answers were clear. And under the Federal Arbitration Act and the federal policy favoring arbitration, the answers were clear. What about the contract, though? I mean, I understand the regulatory arguments you're making about insurance, but the contract is what we're bound by, isn't it, not the regulations? Indeed, Your Honor. So I think there are three ways to look at how the district court got it wrong. The first is the plain language of the contract. The second is that language entered into against the regulatory and statutory context. And the third is the construction of the contract. So the plain language, I mean, to any layperson, let alone the sophisticated parties here, the plain meaning of officials of property and casualty insurance and reinsurance companies is clear. Everyone knows that. Counsel, the rest of that sentence reads, not under the control or management of either party. And if we read that whole thing, that would benefit your client and would have absolutely no operative value whatsoever to the opposition, would it? Respectfully, Judge Bobby, I disagree. That part of the sentence goes to the disinterested aspect, not under the control of either. So there are hundreds of insurance companies. There are thousands of officials of them who are not under the control of either Amtrust or PRISM. But does PRISM have any property or casualty insurance or reinsurance companies under its control? It does not. It does not. This provision doesn't benefit them. This only restricts you. In other words, this is a silly provision to have been negotiated. The official has to be not under the control of either party. So there could very well be, for example, a former official of an insurance company who actually would qualify under the clause, who now is under the control of PRISM because he's got a job or she's got a job with PRISM right now. So that aspect of the arbitration clause is fully applicable to both parties. And I would submit to the Court the entire arbitration clause is fully applicable to both parties. As I said, there are hundreds, thousands of people who would qualify under this clause available to both parties. What PRISM would have is to turn it on its head and say, notwithstanding that the official needs to be from an insurance company or a reinsurance company, we're going to take someone from our part of the industry, someone who has never served at an insurance or reinsurance company. So now you're building in, in a sense, a bias to that person. And I'd submit that's what this clause takes away is you've got a whole universe of people out there, but they've got to be at insurance or reinsurance companies. And, again, that's plain language. To the statutory context, Judge Nelson, this contract was entered into fully against that context. I mean, PRISM is a peculiar and in many ways privileged animal under California law. And both parties knew that at the time they entered into these agreements. And it is clear under California law, it's not disputed by PRISM or the district judge, that California law in the government code says JPAs like PRISM are not insurance companies, and it is not insurance. Olson. Yeah. The courts that have, the California courts that have done that have commented time and time again that the reason for doing that is so that you don't have public entities such as, such as counties under the thumb of the insurance commissioner. It's a way of, it's a way of preserving the independence of the counties and not subjecting them to additional public official oversight in Sacramento. Respectfully, Judge Bibey, I don't think that's quite correct because what the California courts have said, and they've read the plain language of 990C that says it shall not be considered insurance and shall not be subject to regulation by the insurance commissioner. I think that's what I just said, counsel. I'm sorry, Judge Bibey. I meant to emphasize there are two aspects to 990C. One is it shall not be insurance. Olson. Right. And the second, I think, is what was your point. It's like, it's like belt and suspenders. Well, the Court of Appeals ---- I mean, this is, this is, in any kind of sort of conversational rather than a technical sense, clearly what PRISM is doing is, is a form of, of insurance. It's a self-insurance, and it's a pooled self-insurance so that they're spreading the risk under, among other public entities. That's, that's insurance. It could have, it might have otherwise qualified under, under California law. And so the legislature just said, we don't want you being regulated. We'll regulate you in other ways, but not through the insurance commissioner. And therefore, it is not insurance for purposes of the insurance code. And, Judge Bibey, the, the code goes on to say, the government code goes on to say it's in the disjunctive. It's not insurance and it won't be regulated. And the Court of Appeals in Fort Bragg said this is very broad language. Had the legislature intended JPAs to be treated as insurance for some purposes, but not others, it would have chosen its words differently. And again, this comes back to Judge Nelson's point that we're talking about a contract here. And so our point regarding the stat, statutes. Right, but the, but the, the contract, that, that's the problem. The contract seems to define insurance more broadly even than the, the statutory provisions do. And seems to contemplate self-insurance as, as being a type of insurance. It, it, it doesn't and that's where the district court erred in terms of using those defined terms. And as we point out in the briefing, the defined terms are very specific to PRISM as a company and the coverage documents, PRISM issues as policies. But those defined terms are not used in the arbitration clause. And that's, that's the rub here. That the arbitration clause uses the plain language terms insurance or reinsurance company. And, and PRISM certainly could have bargained for something different. As we've pointed out, there are numerous cases that acknowledge arbitration clauses that go beyond the qualification here. That add underwriters that Lloyds can serve as arbitrators. Risk managers can serve as arbitrators. Even lawyers like me who've worked for insurance companies for 20 years can serve as arbitrators. But PRISM didn't bargain for that here. It, it bargained for this contract that it got. And so ultimately, what we have are two sophisticated parties who agreed to plain language in the contract, that plain language is fully supported by California law. And then the, we have the Arbitration Act on top of it that says you gotta enforce it as it's written. Roberts, counsel, I'm looking at the Certificate of Casually Facultative Reinsurance. I mean, you know, point three says, describes the insured's name and address. Is that a misnomer because we use the term insured? Does that refer to PRISM? It, it certainly does. Well, why would we refer to them the insured if it's, if this is not, if it's not insurance? And this is reinsurance. I mean, the whole, the whole term suggests that we are doing something again. And, and I'm glad you raised that because it's an important point here, that there's another aspect of the California government code that specifically makes an exception that JPAs, because the insurance code in California says only insurers can buy reinsurance. The government code in 990D makes an exception and says JPAs can purchase reinsurance. So that's how, that's how we can have a contract like this. And so now, PRISM has decided to step out of its JPA world and is going to contract with a commercial reinsurer. And so we have defined terms as to what PRISM is for the purpose of this contract and what its, its policies are. But then we've got the rest of the contract, which does not use those defined terms. It uses the plain language, plain English terms, insurance or reinsurance company. And so having, having availed itself of 990D to go out into the commercial markets and buy reinsurance, it's now playing in those waters. It could have negotiated a different qualification provision, but it didn't. And the Federal Arbitration Act says the court needs to enforce the contract that the parties entered into. That ultimately is where we got to here. And, and where the district court erred, the rub of it is at 63 of the, of the excerpted record, where the district court said it wasn't looking just at the Why? Because, quote, the whole point of the selection processes, process was to allow each side to pick an arbitrator representative of its general interests. Neither the Ar, Federal Arbitration Act nor California law allowed the court to look behind the language and posit what the parties, what the point of it was. The Federal Arbitration Act, section four, says you enforce the language as the And PRISM was more than sophisticated enough to negotiate different language if it wanted it. Fundamental canon of California contract construction, the court cannot use construction to rewrite the contract, which happened here. As to the second issue, that also is one about basic contract enforcement. The contract provides that if there is, if the responding party does not name an arbitrator, does not appoint an arbitrator within 30 days, that the claimant here, Amtrust, is authorized to and will do that. And there's no dispute that the time of, of the essence provision in the arbitration clause is, is enforceable. There's no dispute that the 30 day provision is enforceable. No, but it's one thing to say that if you are completely silent and don't name anyone, you lose that right and the other side gets to do it. It's something else to say, if you name someone, but it turns out that person is disqualified, that you don't get a second shot at the apple. Why not? Well, Judge Rakoff, I think on, on the facts here, what you said at the end is, is critical. When it turns out the person is disqualified. And so, what, what the clause provides is that you've got to appoint an arbitrator and the entire clause sets out what, what the arbitrator has to be qualified for. And here, on these facts, it wasn't that it turned out that Mr. Connolly was not qualified. When PRISM named him, Amtrust turned around the next day and said, he is not qualified. You've got to comply with the clause and if you don't, we will. And they didn't. They made a litigation and arbitration strategic choice that they were going to take the position, notwithstanding the language of the clause, that a JPA person and only a JPA person would serve as their arbitrator. And when they were put on notice of that, they decided they were going to run with it anyway. And, and in that situation, the clause required Amtrust, said it will, it will name the second arbitrator. And I see my time has expired. You want to preserve your time? If I may. Okay. Sure. Mr. Brenneman. May it please the court. My name is Eric Brenneman and I represent Public Risk Innovation Solutions and Management, better known as PRISM and formerly known as CSAC Excess Insurance Authority. I think fundamentally, what Mr. Keeley is arguing is that the court should interpret the terms that are used in the contract. And that's actually where the district court got it correct. When it comes to provision about arbitrator qualifications, that the California law requires the court to interpret the entire contract, each part giving effect to one another. And there are multiple parts in the contract that describe PRISM as a type of insurance that issues a policy to its insurers. And those are used throughout the entire certificate. And I think it's also notable that at the time of contracting, PRISM's name was CSAC Excess Insurance Authority. Now, none of these terms apply to PRISM because it's a joint powers authority or a JPA, but the parties chose to use them. And those need to be given effect. I think Mr. Keeley argues that these terms were somehow required because in order to bring this transaction within the gambit of reinsurance. However, there was already a statutory exception in California Government Code 990.8d that allowed the transaction to go through. So these terms and these definitions were not necessary, yet the parties chose to use them. And I think that even applies with respect to the arbitration clause itself. You've got multiple terms that leads one party to believe that it would be considered a type of insurance for purposes of this relationship in this contract language that was used. And consistent with why litigants select arbitration as opposed to litigation. They would be able to choose an arbitrator representative of its general interests, and then AmTrust would be able to choose the same. And they would be able to represent each other before a third neutral. I think it's also important and that there is no evidence in the record that this transaction was underwritten any differently than a normal insure, reinsure, sedent transaction. Nothing changed. It was just underwritten and issued, and it contained these language, contained these terms that specifically describes PRISM as an insurance company. And when it comes to the arbitration provision itself, as was pointed out by the court, not under the management or control of either party. And I think that needs to be given effect too. If it's someone that PRISM chooses from its segment of the industry, that term not under the management or control of either party has effect in that sense when it comes to JPAs. So in looking at the actual terms used in the certificate and what the district court got correct is that the parties themselves described PRISM as something broader than simply just a joint powers authority. Mr. Keeley makes a big point about you could have contracted for something else, but these are the terms that were used, including that insurance definition that exists throughout the entire contract. So you've got a situation where a party is led to believe that consistent with the purposes of arbitration to have industry insiders resolve disputes in a manner that is amicable to the parties, that PRISM would be able to choose someone from its segment of the industry that could represent it in these arbitrations. And I think what AmTrust is really trying to do runs afoul of the bedrock concept of the duty of utmost good faith and fair dealing that exists in any reinsurance relationship. It's meant to be a business relationship that is beneficial to both sides. And as part of that business relationship, there should be an equal-handed approach to every aspect of the contract. And that includes when it comes to the arbitration provision itself. And I think that as the district court correctly found, as a practical matter, a self-insurance pool serves the same purpose as insurance and is recognized as an alternative to insurance. And the parties confirm that in the course of underwriting and drafting the certificate with those defined terms. And I think it's also evident that PRISM's current party arbitrator, Jeffrey Beachum, whose biography is provided at the supplemental excerpt of records at page 32 and 33, even describes his pool as operating like a mutual insurance company, but not regulated as such. The certificate itself uses the terms property or casualty reinsurance company, and PRISM provides general liability coverage. And those are the exact pools that are subject to the arbitration and were underwritten by the certificate. And so, for that reason, PRISM should be able to select someone from its segment of the industry when it comes to the arbitration provision. And it's consistent with the entire purposes there. On the second issue that was raised by, that came up in the district court, in terms of the time is of the essence provision, I think the court correctly noted that there's nothing that talks about a party being able to object to another party's arbitrator, and then being able to abrogate that ability to itself to be able to select that party arbitrator's over its objection. It's a fundamental rule of California law that the words need to be given effect. And the word object is never even in the term of the arbitration certificate. It would be a fundamental rewriting of the entire certificate to be able to allow AmTrust to do what it wants to do here. And that would violate California law in that regard. And there's really no legal precedent that was cited in the briefs that addresses this exact situation. Perhaps the most closest case is the employer's insurance of Wasow v. Jackson case. And even there, the court said that the only thing we can look at when you have a requirement to select someone within 30 days is whether that was actually done. And here, that was actually done. And the employer's Wasow case said, you know, the circuit court went on to review the arbitrator qualifications, but it couldn't when we're just looking at that issue, it's just a timing requirement. So in that regard, it would be a fundamental rewriting of the entire certificate to allow AmTrust to do what it's trying to do here. I think perhaps most importantly, as I mentioned previously, it's the reinsurance relationship parries the duty of utmost good faith to one another. And that should apply without throughout the entire certificate and including to the arbitration provisions. And what AmTrust is trying to do now that a dispute has arisen later on and it's holding millions of dollars hostage of that are due and owing to PRISM is try to find some way to Jimmy the system, to allow it to gain a completely unfair advantage by having two people from the insurance industry that are not familiar, you know, may not be familiar with the nuances of JPAs and how they operate to decide the dispute. And that's simply not what the parties bargained and contracted for. AmTrust was well aware that PRISM was a JPA, yet it described it as a type of insurance in the contract. I was well aware that it doesn't have insureds, yet that was what was described, well aware that it doesn't issue policies, yet that's the terms, the actual terms that the parties used. And now what we're having is a fundamental request to rewrite the terms and consider just the arbitration provision solely isolated and without context to the entire business relationship. And that's something that is fundamentally inconsistent with California law and should not be allowed and isn't allowed. And that the district court found correctly in that regard. And just to be clear, PRISM's position is not that it's insurance company or that it's insurance company for any purposes, but the court's task here is to simply interpret the terms that are before it in the contract and give effect to the language that the parties used. And that is where the district court found correctly. I think ultimately these are two very narrow issues that are before the court. And again, the terms used need to be given effect. The district court findings were consistent with notions of fair play, substantial justice, why litigants select arbitration as opposed to litigation. And it's also consistent with the fundamental concept of the duty of utmost faith and fair dealing that exists in the reinsurance relationship. And on that, your honor, I would submit, unless there are any questions. Thank you, counsel. Thank you for your argument. We'll hear rebuttal. Very briefly, your honors. I agree with my friend, Mr. Brenneman, that the questions are narrow, but they have broad importance and impact. And ultimately what this case is about and where the district court went wrong is that it didn't apply section four of the FAA because it didn't apply the language of the contract. It looked beyond it. And that was error under California canons of contract construction, but particularly under the FAA. And the only other point I'd make is my friend said that I argued that somehow the terms, the defined terms were required, but noted that section 990D was in place previously. I want to be clear. We're not arguing those terms were required. We're arguing those terms were defined in the contract against the context of section 990D and 990C, that PRISM is not an insurance company. It doesn't offer insurance. And so having gotten into a situation where it was contracting, PRISM was obligated to contract for the terms that it wanted. Otherwise it's held to the terms that are in the contract. And the terms in the contract say arbitrators must be officials of insurance and reinsurance companies. PRISM's appointed arbitrator was not. The district court should be reversed. Unless there are any questions. I don't think so. So thank you very much to both counsel for your arguments in this case. That concludes the arguments for this morning and the court will be adjourned. Thank you.
judges: BYBEE, NELSON, Rakoff